UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| AMERICARE SYSTEMS, INC.,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>THOMAS M. PINCKNEY, JR., and,  )<br>HOWELL & FISHER, PLLC,  )<br>)<br>Defendants.  ) | Civil No.: 4:11-CV-53<br>Judge Collier |

## **M E M O R A N D U M**

Before the Court are cross motions for summary judgment filed by Plaintiff Americare Systems, Inc. ("Plaintiff") (Court File No. 55) and Defendants Thomas M. Pinckney, Jr. and Howell & Fisher, PLLC ("Defendants") (Court File No. 51). Both responded to the respective motions (Court File Nos. 57, 58). For the following reasons, the Court will **GRANT** Defendants' motion for summary judgment (Court File No. 51) and **DENY** Plaintiff's motion for summary judgment (Court File No. 55).

**I.     FACTUAL BACKGROUND**

Plaintiff retained Defendants to defend Americare, Shelbyville Residential, and two nurses in a lawsuit against Plaintiff in Bedford County, Tennessee ("Bedford Litigation"). After a trial, the jury awarded compensatory damages and the trial judge moved into the second phase to consider punitive damages in accordance with *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). During this second phase, the Bedford plaintiffs offered into evidence an article from the St. Louis Business Journal with a portion highlighted stating that Americare had had gross revenues of $47 million in 1998. Despite recognizing the article as hearsay, Defendant

Pinckney failed to object to the article because he feared that the damage had already been done because the jury had seen the article and heard opposing counsel's statement before he had the opportunity to object. He worried that any objection would only compound the problem by emphasizing the significance of the article and making his client appear as if it had something to hide. The jury awarded $5 million in punitive damages on April 30, 2010.

Following the verdict, Plaintiff retained Miller & Martin and Moore & Lee to handle the post-trial matters. Between May 9, 2010 and September 29, 2010, these two firms reviewed the Bedford Plaintiffs proposed judgment and findings of fact and communicated and revised this proposed judgment. On October 1, 2010 the trial court issued written findings addressing the punitive damages award. The trial judge specifically stated that "to the great surprise of this trial judge, there was no hearsay objection to the introduction of this evidence" (Court File No. 51-11, Order Approving Verdict, at p. 7). On February 28, 2014, the Court of Appeals affirmed the judgment of the trial court but reduced the damages award to $2,985,000 pursuant to an *ad damnum* clause. Plaintiff filed this action alleging malpractice based on the failure to object to the introduction to the article.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900,

907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc*., 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.     DISCUSSION

A legal malpractice claim is subject to a one-year statute of limitations. Tenn. Code Ann. § 28-3-104. Legal malpractice claims are governed by the discovery rule and thus accrue when the plaintiff knows or reasonably should have known that the injury has been sustained. *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). "In legal

3

malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct." *Id.*

An actual injury may be "the loss of a legal right, remedy or interest, or the imposition of a liability" or such an injury could "take the form of the plaintiff being forced to take some action or otherwise suffer 'some actual inconvenience,' such as incurring an expense, as a result of the defendant's negligent or wrongful act." *Id.* (quoting *State to Use of Cardin v. McClellan*, 85 S.W. 267, 270 (1905)). Tennessee courts have repeatedly held that incurring legal fees to address the consequences of alleged malpractice constitutes such an actual injury. *See, e.g.*, *Rich v. Warlick*, No. M2013-01150-COA-R3CV, 2014 WL 1512821, at *8 (Tenn. Ct. App. Apr. 15, 2014) (holding that the plaintiff suffered actual injury when he "incurred additional expenses by his decision to hire another attorney" after he became unsatisfied with his trial counsel's performance despite the fact that he continued to retain his original defendant attorney); *Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 543 (Tenn. Ct. App. 2012) (holding that the time and expense of defending against a motion for summary judgment as a result of the defendant attorney's malpractice constituted an actual injury before judgment was entered); *Honeycutt v. Wilkes, McCullough & Wagner*, No. W2007-00185-COA-R3CV, 2007 WL 2200285, at *6 (Tenn. Ct. App. Aug. 2, 2007) (holding that the plaintiff's actual injury occurred when she was forced to incur attorney's fees to defend her alimony award rather than when the Court order terminated the award).

Here, Plaintiff acknowledges that "Americare would not have appealed the Farrar

Litigation trial verdict, but for the trial court's award of punitive damages against Americare" (Court File No. 56, Pl. Summary Judgment Br. 4). And, Plaintiff's central theory of the case is that such damages could not have been awarded had Defendant Pinckney objected (*id*.). Plaintiff thus suffered actual injury when it retained post judgment and appellate counsel to address the award of punitive damages, because this constitutes "incurring an expense" as a result of defendant's alleged negligent act. *John Kohl*, 977 S.W.2d at 532. And a "plaintiff may not . . . delay filing suit until all the injurious effects and consequences of the alleged wrong are actually known to the plaintiff." *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998).

The knowledge component may be satisfied by constructive knowledge, and thus, the statute of limitations may begin to run before the plaintiff has actual knowledge of the malpractice if "the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct." *John Kohl*, 977 S.W.2d at 532. Importantly, "there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard," *id*. at 533, nor is there a requirement that "a client must have been advised by a professional that malpractice has occurred, *Honeycutt*, 2007 WL 2200285, at *8. "Where some injury has occurred and is known to the plaintiff, the fact that the plaintiff is not fully aware of the entire nature and extent of the injury will not toll the statute of limitations." *Rayford v. Leffler*, 953 S.W.2d 204, 207 (Tenn. Ct. App. 1997).

The parties disagree on the basic legal framework of the discovery rule as it applies in malpractice cases. Plaintiff argues the general rule is that the injury accrues when a court issues an adverse judgment and that an injury only accrues before the entry of an adverse judgment

where "(1) the client[] [was] keenly aware of their counsel's missteps and a resulting concrete injury at a time earlier than the final adverse judgment or (2) the attorney's error was not contingent on another subsequent action to cause the resulting injury" (Court File No. 57, Pls. Resp. Br. at p. 9). Defendants by contrast argue that Tennessee applies the discovery rule and the injury accrues when a client has suffered an actual injury and has actual *or constructive* knowledge of the facts giving rise to the injury. They characterize Plaintiff's purported "exceptions" as mere applications of the constructive knowledge rule.

Both parties cite to *Cardiac Anesthesia Service., PLLC v. Jones*, *Willson v. Wohlford*, and *Rich v. Wahrlick* as supporting their respective position on the knowledge requirement. In *Cardiac Anesthesia Services*, the plaintiff CAS had entered into a contract with a regional medical center. 385 S.W.3d 530, 532 (Tenn. Ct. App. 2012). The relationship between CAS and the medical center broke down. *Id*. at 533. In the resulting litigation, the medical center argued the contract was illegal due to a fee splitting agreement inserted by CAS's attorney. *Id*. CAS won at the trial court, but the Tennessee Court of Appeals found that the fee splitting agreement rendered the contract illegal. *Id*. Soon after the Court of Appeals judgment, CAS filed a malpractice claim against attorney Jones. Attorney Jones argued the suit was filed outside of the relevant statute of limitations and the Tennessee Court of Appeals agreed. *Id*. at 533–34. The Court of Appeals held that the time and expense of defending against the medical center's motion for summary judgment constituted an actual injury. *Id*. at 543. As to knowledge, the Court held the facts alleged in the motion for summary judgment would have put CAS on notice of facts that could invalidate the contract drafted by attorney Jones. Thus, the statute of limitations began to run at the time of motion for summary judgment. *Id*. at 546.

Both *Willson* and *Warlick* are cases in which the client actually sent a letter to the

6

attorney expressing dissatisfaction with the representation, and thus are more appropriately categorized as "actual knowledge" cases. *See Willson v. Wohlford*, No. E2004-02020-COA-R3CV, 2005 WL 1183152, at *3 (Tenn. Ct. App. May 19, 2005) (holding that plaintiff's malpractice injury resulting from her divorce lawyer's performance accrued when she sent a letter expressing concern over the attorney's representation); *Rich v. Warlick*, No. M2013-01150-COA-R3CV, 2014 WL 1512821, at *8 (Tenn. Ct. App. Apr. 15, 2014) (holding that plaintiff's malpractice injury resulting from his attorney's failure to submit a proposed witness list by the Court deadline accrued when the client sent the attorney a letter expressing his dissatisfaction with the quality of the representation and referenced the missed deadline)

The Court is concerned that Plaintiff's proposed reading of these cases would effectively read constructive knowledge out of the discovery rule. If the only way an injury can accrue before the entry of an adverse order (which almost always would confer knowledge) is when it can be demonstrated the client was "keenly" or "acutely" aware of the facts giving rise to the action, there seems little room left for constructive knowledge. The Court finds Defendant's reading of *Cardiac Anesthesia Services* more persuasive.

Defendants draw parallels between *Cardiac Anethesia Services* and the case at bar (1) both CAS and the Plaintiff here were represented by independent counsel following the alleged malpractice; (2) both CAS and the Plaintiff were put on notice by filings in the case (the motion for summary judgment for CAS and the proposed order on punitive damages here); and (3) both CAS and the Plaintiff here took affirmative action in response to these filings—CAS by responding to the motion for summary judgment and Plaintiff by drafting its own proposed order (Court File No. 59, Defs.' Reply Br. at p. 7). Drawing partly on these parallels, the Court finds Plaintiff had constructive knowledge of the facts giving rise to the injury before the entry of the

7

final order.

Based on the uncontroverted evidence, Plaintiff retained independent counsel to handle the appeal. As part of this representation, Plaintiff's attorneys reviewed the proposed judgment submitted by the Bedford Plaintiffs which specifically referenced the article (Court File No. 51-9, Bedford Pls. Prop. Judgment at p. 9). Billing records demonstrate that attorneys for Miller & Martin discussed and reviewed the proposed judgment beginning on July 6 and continuing throughout July, August, and September 2010 (Court File No. 51-6, Miller & Martin Billing Records at pp. 3–5). These billing records also demonstrate that these attorneys repeatedly researched punitive damages throughout this same period (*id.*). And finally, these records demonstrate Plaintiff's attorneys at Miller & Martin conducted extensive reviews of trial transcripts (*id.*). Such a review *necessarily* would have exposed Plaintiff's attorneys to the facts giving rise to the alleged injury, the introduction of the hearsay article.

Plaintiff's argument that "prior to October 1, 2010, appellate counsel could not possibly have known that the court considered Pinckney's failure to object to the Article to be an error, or that the court would rely on the Article as the sole piece of evidence to affirm the $5 million punitive damages claim" (Court File No. 57, Pl's. Resp. Br. at p. 19) is inconsistent with their theory of liability. Plaintiff's theory of the case is that the failure to object was an obvious error and one that any experienced lawyer would know was extremely harmful to the client, even in the heat of a trial. Plaintiff cannot now argue that its own counsel—armed with the benefit of both hindsight and the time to review the entire record outside the hectic environment of the trial—could not have known what was so objectively obvious. And—if any reasonable lawyer would have known that it would be error not to object—why would it be not be reasonable to assume that the judge would come to that conclusion? Similarly, if, as Plaintiff claims,

8

Tennessee law requires the submission of financial information[1] to support a punitive damages award, and this article was the only such evidence presented, would it not be reasonable for these appellate lawyers to assume the judge would rely on this piece of information?[2] Plaintiff's attorneys reviewed all of the facts giving rise to the alleged malpractice claim before October 1, 2010. And, such knowledge is imputed to the client. Wilkins v. Dodson, Parker, Shipley, Behm & Seaborg, 995 S.W.2d 575, 584 (Tenn. Ct. App. 1998) (noting that "[a] client is implied to have notice of facts transmitted to his attorney in the matter and course of his employment for such client.") (quoting *Roberts v. State*, 546 S.W.2d 264, 265 (Tenn. Crim. App. 1977)).[3] Therefore, on the undisputed facts, Plaintiff had constructive knowledge and actual injury prior to October 1, 2010; Plaintiff's claim accrued before October 1, 2010; and the one-year statute of limitations ran before October 1, 2011. Plaintiff's claim is thus barred by the statute of limitations and the Court will **GRANT** Defendants' motion for summary judgment (Court File No. 51).

## IV. CONCLUSION

For the above reasons, the Court will **GRANT** Defendants' motion for summary judgment (Court File No. 51) and **DENY** Plaintiff's motion for summary judgment (Court File No. 55).

---

[1] Defendants vigorously dispute whether this is an accurate statement of law. Because the Court disposes of the case on the statute of limitations issue, the Court will not address whether *Hodges* requires the judge be presented with evidence of a defendant's financial condition before awarding punitive damages.

[2] This is also corroborated by the fact that the article is specifically addressed in the proposed judgment submitted by the Bedford Plaintiffs (Court File No. 51-9, Proposed Judgment at p. 7).

[3] Although it may not be appropriate in some legal malpractice cases to hold the client responsible for facts transmitted to his attorney where that attorney is now the allegedly negligent defendant attorney, such concern is not implicated when, as here, the client is being held accountable for facts transmitted to newly-retained, independent counsel.

**An order shall enter.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**